Good morning, Mr. Palvin. Yes, Your Honor. Okay, you may proceed. May it please the court. Your Honor, shortly after midnight on October 30th, 2010, HPD officer Chris Thompson shot Ricardo Salazar-Limon in the back during a traffic stop. As a result, Salazar is permanently paralyzed and wheelchair bound. Now there are two issues that we have with the court's, district court's opinion below and that's for this court's consideration. The first is whether officer Thompson was entitled to qualified immunity under the facts when viewed in the light most favorable to Thompson, sorry, when considering the facts viewed in the light most favorable to Salazar. The second is dismissal of the Monel Municipal Liability Claim based on the finding that there was qualified immunity and no constitutional violation. Now as this court has recognized, these cases are very fact-intensive and they require a, you know, a close analysis of the facts in each case at different points in time but specifically when the shooting occurred. So when reviewing the facts in the light most favorable to Salazar, back on October 30th, 2010, Salazar was driving on the freeway. Officer Thompson was running laser radar doing traffic patrol that night. He clocked Salazar speeding, decides to initiate a traffic stop. Salazar's going into left lane. Thompson was in, over on the right shoulder. So he turns the lights and sirens on, gets behind Salazar, initiates traffic stop. The record reflects that Salazar pulls over all the way from the left to the right, changes lanes. There's no testimony that he drove erratically while pulling over. Salazar pulls entirely into the right shoulder. His car is not sticking at all into the main lanes of the traffic. Thompson pulls directly behind Salazar's vehicle. Thompson gets out of his vehicle. He goes up to Salazar's vehicle. This is on an overpass, right? This is an overpass. Overpass, what, interstate under it? It was U.S. Highway at the time. It's now an interstate. Same freeway, though. It ends up on an overpass. That's just where the cars ended up stopping. So Thompson gets out, goes to Salazar's vehicle, asks him for his driver's license and insurance. Salazar doesn't have a license, but gives him a Mexican ID and his insurance card. He complies with Thompson's command. At that point, Thompson goes back to his vehicle, checks Salazar's vehicle, Salazar's ID. Everything's clear. No warrants, no anything like that. At that point, there's nothing to suspect that Salazar may be in any way dangerous or wanted for any crimes, besides the initial speeding stop right there. So once Thompson checks everything, he goes back and because he says he smells alcohol coming from the vehicle, he decides he's going to do a DWI investigation, tell Salazar to get out of the vehicle. Salazar gets out of the vehicle, walks under his own control. There's no testimony that he stumbled, wobbled, or showed any signs of intoxication. Salazar walks over. He did plead no contender to DWI, did he not? He did later plead no contest to DWI, yes, Your Honor. But again, that's something that occurred afterward. So Thompson walks back. Him and Thompson are standing face to face between the two vehicles. At that point, according to Salazar, Thompson said, I'm going to arrest you right now. Tells him to put his hands back. Thompson grabs Salazar's hands. When he does so, Salazar pulls his hand away and turns around. So at this point, Salazar is facing away from Thompson. Salazar starts walking on the right side of his vehicle, and everybody agrees he was walking, so there's no testimony he was running or trying to flee. Now the right side of his vehicle would have been facing, would have been on the side of the traffic? No, Your Honor. It would have been on the side of the rail of the overpass. He was walking on the passenger side of his vehicle. It the rear to the front of his truck was about 17 feet. Testimony is he got about halfway, and he heard Thompson say, stop, stop right there. Then he felt heat in his back, felt wet from the blood, and then turned back to look to see what happened. Now he also pled no contender to resisting arrest and assault, right? Your Honor, he pled no contest to resisting arrest, and if you looked at the actual charges in the record, the charge was pulling his hand from the officer, and that was the only thing he was charged with, and the only thing he pled. Would you look at that in deciding this incident, the fact of what he pled ultimately? Well, Your Honor, it doesn't matter in this case, I would argue, because there's no dispute whether, at this point, whether the initial stop was okay or whether you could detain him or any of that. The only moment in time we're looking is... There is some dispute. I mean, in other words, as I understand it, you're disputing that you're engaged in any kind of physical scuffle with the policeman. The policeman says that you did engage in a political scuffle, and he pled no contender to resisting arrest and assault, and DWI laid off. Now that's, you can put those facts together and make some conclusion from it. Well, I would correct one thing, Your Honor. Again, you mentioned assault. The only thing he was charged with was, and you can read it, pulling his arm away. So it was just a passive resistance of pulling his arm. That was the resisting arrest, and so Your Honor kind of got to... There was no manners act in this case, is our basic argument. He pulls away, and then at this point, it's a new situation. Talalar is walking away. He's facing away from Thompson. He's creating distance. The testimony is he never reaches into the truck. The three other guys in the truck, they never do anything. What about the waistband? Well, the waistband, according to Thompson, he says, well, I kind of segue into, there's another issue of the credibility of Thompson. Right, but because the officer says he reached for the waistband at some point. Yes, Your Honor, but... And that was never denied. That's the thing that disturbs me. Well, that's in his deposition, he says that, but if you go back to the initial... But nowhere, nowhere has you or your client denied that he reached into the waistband, and the district court specifically found that there was no evidence that refuted that. Now, that's the way the record reads. You're correct. There is no statement by Talalar that says I did not reach in my waistband. That is correct, Your Honor, but I don't believe that's the material fact, or if it is, it's one of two material facts. The material fact... Well, it could be crucial. I mean, actually, I mean, and that is if he did reach into his waistband, then that gives incentive for, or puts the officer on alert that his life may be in danger, but if he didn't reach into his waistband, then you have a cleaner case for yourself. I agree. I agree that, and our experts said the same, there would be some threat. There would be some threat at this point, but the actual Mannis Act, where there's an immediate threat, which is what's required, is an immediate threat to use deadly force, would only exist if, as the district court erroneously found, Salazar turned prior to being shot, but his testimony is clear in his depo that he felt the heat and the blood, the wet in his back, and then he turned around. So, looking at his version of events, he was still facing away. His hands were somewhere near his waistband, depending on which version of Thompson's statement, the day of the incident, right after, he just says the suspect had his hands near his waistband. So, your position is it's not reasonable to shoot if you have, if the person puts their hands in their waistband, unless they also turn. Is that what your position is? For purposes of this case, yes, but even as a broader thing, under this court's precedent, there has to be some act, an actual threatening act, and according to the record, Salazar never even yelled at or threatened, so he didn't say I'm going to shoot you. He didn't say reaching in the waistband is not a threatening act on its own, and is itself with no struggle, according to Salazar, no struggle. Well, he resisted. I'm sorry? He resisted the arrest. He arrested, he resisted the officer's commands. He had weaved and driving on the car, in the road, and he walked away. He was leaving the scene, but he looked back, finally. But after he was shot. Well, I don't, I don't, I don't think that is the way that the evidence stacked up as I understood it. Now, show me where Judge Higginbotham, Judge Rosenthal erred in what she says the plaintiff's movement was before he was shot. Well, the main error, the material fact in this case is. Now, you give us, I'm asking you what is wrong about what Judge Rosenthal says about his movement before he's shot. Yes, Your Honor, the main thing is, according to when Salazar reached in his waistband and turned toward Thompson is when he got shot. And then she says, specifically, there was no controversial evidence. But there is, Your Honor, according to Salazar's testimony, he got shot and then turned. So those are two completely opposite things. But then the medical evidence shows that he had to be, that he was turning at the time that he got shot. Well, the medical evidence in this case, unfortunately, doesn't really help anybody. There was no exit, Your Honor. So all we know is the bullet went in right here in the lower back. That's all we know. We don't know which angle. Okay, well, where am I getting the impression that the medical testimony was that he had to be turning at the time that he was shot by the angle of the bullet hitting his body? That was HPD's Lieutenant Allen. So their own officer is the one who said that it wasn't a qualified examiner. He's not a doctor at all. It was just his opinion. So it's the whole thing boils down in your mind to whether your client was turning towards the officer and your position is there's a fact issue on that because you have opposing testimony of two main witnesses. Correct. One, according to our guy, he specifically says he got shot and then he turned and, you know, this goes back to Baker v. Putnam where it says, you know, this back in 1996, a mere motion to turn and face the officer, you know, isn't really even enough by itself. But what about in conjunction with the reaching in the waistband? Yes, Your Honor, but our next point is that the nature of the wounds indicate that Baker Jr. was not facing Putnam when he was shot, raising a question of fact as to the reasonableness of the shooting. So we have the same thing here. And there's other cases we saw in the briefs where they said, even there's a few cases where they get shot in the front, the court say, well, that's okay. We can understand that. But then, you know, these three, four shots in the back, that is not okay and qualified immunity is denied just for those other shots. So we have the same thing here. It's undisputed that he was fact in this case. If he was not turning back towards Thompson before he got shot, there simply was no threatening act. Did he stop? Did he stop before he was shot? He stopped. No, he was, he was still walking. Still getting away. He was still walking slowly towards the front of the truck. Towards what? The front of the truck. Getting away from the officer. Yeah, again, it's understood he was walking, not running. Is there any evidence or did he testifies to why he would walk away from the officer, notwithstanding the fact that the officer says stop. He admits that even after the officer said stop, I continued to walk away for two or three steps or something like that. And then he shot me or something. What he, what he says is basically here's stop, stop right there, which, you know, could be one or two commands, but they were right like that. Stop, stop right there. And then he basically says he took one or two steps and was almost simultaneously shot. So there really wasn't any time if he was basically in mid-step still at that point. So it wasn't. Okay, this may sound like an extreme question, but do we have clearly established law that says if you're disobeying a command and walking away that the officers can't shoot you in the back? Do we have clearly established law in the circuit that says that? Your Honor, I can't recall at this point if it's this circuit, but there are cases that... I know there are in other circuits and, you know, but I'm just wondering if we have clearly established law in this circuit that they can't shoot you in the back. This appears to be a novel factual pattern, but it goes back just to the basic. You can't shoot unless there's immediate threat. And going back to Manus v. Lawson and all the other cases, it's all... there was some threatening act by the suspect. Most of the time they were reaching under the seat and popping back up. Okay, Mr. Powell, you have saved some time for rebuttal. Mr. Higgison, we'll hear from you. May it please the Court, I'm Robert Higgison. I represent Officer Chris Thompson in the City of Houston. The Court should affirm Judge Rosenthal's summary judgment for both appellees because there are no disputed material facts to support Mr. Salazar's 1983 claim of a Fourth Amendment violation and to overcome Officer Thompson's qualified immunity. Now, did the District Court decide there was no constitutional violation or did she only say that it was not clearly established? She decided that there was no constitutional violation. And if I can just elaborate on that a little bit, let me describe it this way. No one has a constitutional right to take actions, whatever size, large or movements might be, that will give an objectively reasonable officer reason to believe that his life is in danger or that he's in danger of serious bodily harm. No one has a constitutional right to do that and expect not to get shot in the process. Okay, so but walking away, if the facts really were like what opposing counsel says, that his client was just walking towards the front of the vehicle, would you believe that that would not put the officer's life in danger? If the facts were he was just walking away and that's absolutely it, that would not put the officer's life in danger. Okay, add walking away but reached in the waistband. That's a whole different story. Do you, so you believe that reaching the waistband even if you don't turn around is enough? I believe so given the totality of the circumstances in this case. Well, I mean, the thing is if you reach in your waistband, you can immediately turn around. I'm not asking that that's wrong. I'm just asking what his position is. So I'm sorry to be uh kind of snickering at this judge but that's exactly what I was going to say. Okay, so please please I'm happy for you to to answer judge on my behalf. It kind of gives more credibility. I should not push you away from the podium. I'll get back up here. He does pretty well though. I'm very trained. We've done some in the legal department and those situations develop immediately. They're incredibly quick and so given the totality of the circumstances, judge, what I would say is here officer Thompson is dealing with a man who he has justifiable reason to believe is drunk. Okay, and later that proves to be the case. So here this man is intoxicated. He's non-compliant. He has already shoved him and let me go back to what that indictment said. The indictment that he pled no no to said uh was a charge of resisting arrest and it specifically said that he shoved or pushed the officer. All right, so this is more than just some little no I didn't I just jerked my hand away. It says he shoved or pushed the officer. You put that coupled with there are four men here in this truck. There's alcohol smell in the truck. He had been drinking. The officer Mr. Salazar had been drinking which means this guy's got a judgment that's probably off and uh I mean at least it's reasonable for an officer to say this person who's intoxicated and was speeding and weaving may be using bad judgment at this time. I don't know what he wants to do. There are three men in this truck. I haven't searched yet. I haven't searched the truck. He's tried to push me into the traffic. He tried to push me over the rail. There's just a little bit of room here. So is it your position that it doesn't matter whether or not the gentleman was turning around or not? You know, I'm yes, I would say that now judge Rosenthal said that it's immaterial which direction he was turning but it's undisputed that he was turning. Now I would also look at this and say even considering um Mr. Salazar's claim that he turned around after he felt something. That doesn't have to mean that he didn't turn around before that. Right well but if it could create a fact dispute. I'm trying to figure out if it's a he was turning because it's material if it's not appropriate to shoot him unless he's turning. It's not material if you tell me and the law agrees with you that just reaching in his belt even if he's not turning is is good enough reason to shoot in the back and so that's that's why I'm trying to figure out if there's a material fact dispute. Right. Can you help me with that? I hope so judge. We have to consider that this is a an evolving situation and that the law has repeatedly from this court as well as the U.S. Supreme Court has has repeatedly uh affirmed that we don't second guess the officer in a situation where they have to make split second judgments and we know number of cases that say this that you have to see what's happening right here and make a call right then. Although they summarily reversed us in Tolan v. Cotton so um so I it's not yeah so that's so I'm trying to make sure we get it right here. Of course of course judge I appreciate that and I don't mean to be treating this with levity. It's a very very serious injury to this gentleman. It seriously is but to me this is not a scenario that describes a police officer that has done something incorrect which is kind of what is kind of floating around out in the but instead this is a this should be a uh a public uh safety announcement about don't drive and drink. Right. I'm not interested in the public policy implications on either side of that. I just want to know judge judge Rosenthal very learned respected judge says that they that that he was turning that there's no dispute that he's turning and opposing counsel says well there is a dispute that he was turning. Is there I'm asking you you're an officer of the court was the district court incorrect when it said that there was no dispute that he was turning? You know judge I'm going to try to not sound like I'm spinning this. I don't believe that judge Rosenthal made a mistake with that. I don't believe that his statement that he turned after this is the same as saying I was not turning. All right and so when she says there's no dispute that he was turning and there is some disagreement about whether it was right or left and and judge Rosenthal said in a footnote that's not material because it's undisputed that he was turning and so turning either direction whether it's the left or the right doesn't really matter because that helps to go to the idea that this guy may be about to shoot me and yet I'll go further. I don't know whether this court has to do this but I will go further and say even if he hasn't turned yet if he's reaching for his waistband like this and this is where the weapons are going to generally going to be it's immaterial that he didn't really have a weapon and that's very well established in the law. Do we have a case that's um that says that if you could be reaching for a weapon even if you're going the opposite direction that you can be shot I mean is that is that that's a case either way you know I'm not talking about qualifying whether or not it's clearly established I guess I am kind of talking about that. Well you know one in fact we can talk about the clearly established part because um unless there is. Right so that's I'm asking you is there a case the other way because then that would make it really easy uh for you but. I don't I don't know of a case that addresses this exact scenario. I have to defer to uh the number of cases that say we let the the objective reasonable officer consider the totality of the circumstances and we know how these they have to make split second judgments and a number of different kinds of things could be interpreted as an imminent threat and so if he doesn't know if the man is being non-compliant the man who's aggressive perhaps to only a small degree but somewhat aggressive and he is intoxicated which means that the officer has plenty reason to believe this guy is maybe unstable maybe unpredictable we don't know what he's going to do he's walking that way maybe he's going to go up there and get a weapon from them and he starts to reach then the law does not require an officer to wait until the guy turns around and aims a gun at him. Right now back to Rosenthal it is undisputed that he turned he acknowledges that he returned yes even after he was shot yes he says I turned the police say I turned nobody denies that it's when did he turn in which direction did he turn is what is it but the fact that he turned and if someone is shot and turns with his uh as it seems to be undisputed with his hand in his waistband even if somebody's shot they can shoot back so I mean I'm just saying that that's that's essentially is undisputed it's undisputed as far as we know that he reached in his waistband it's undisputed that he was turning and it's undisputed that he was shot at some point in there that's correct Judge Jolly um even after someone is shot they can still shoot sure and there are numerous instances of this happening and um well we're not dealing though with whether or not he could be shot again though if he if he was could shoot back we're dealing with whether the first shot was appropriate so regardless of whether he could shoot back after he was already shot I don't understand how that's relevant well um because we're not dealing with the second shot that ultimately did there was only one shot yeah that's correct and so he says that he turned after he felt something um and you you know taking that as truthful and drawing all reasonable inferences in favor of that uh the most that that can mean for the plaintiff is that he turned after he shot or felt the shot it does not go so far as to say I wasn't already turning this could also help to clarify the direction of the turn even if he was turning this way and get who is the witness that you had that said that he was turning at the time he was shot is that some expert is that just some cop just uh off the top of his head sorry it was lieutenant allen of internal affairs division who has uh investigated numerous police shootings uh and reviewed many many of these I mean did he qualify as an expert before he made that statement he did that end this with regard to the medical and the turning uh well you know I think this is this is something that you know we might wonder about but he but he was qualified as an expert and about the angle of the shot that's what he testified he didn't test I guess he didn't testify about medical aspect correct no he didn't know he didn't testify about medical issues where the shot entered and where it would have come from and what angle it was and that sort of but that's upon the medical report right yes you know if you say okay here's where the entry wound is and mr salazar's counsel has said there's no exit wound so you can't figure out the direction but that's not really correct because the bullet lodged at his l1 and spine so you can go from here to here and you can see where it travels and that is consistent with I don't think that it takes a testify to this I mean it's not a medical thing it's more like a physics type of thing I don't think it takes a physicist to testify to this but that is consistent with him turning this way now officer thompson said he was turning this way judge rosenthal said the direction he was turning was immaterial he was turning now if we consider the fact that turning this way and you get shot here what the officers tell us is that that really often spins somebody around this could account for both of these terms it may have been turning this way get shot and then that spins him around turning this way so that officer thompson may have accurately testified from his memory that he was turning to the left although because that's what he remembers and of course then mr salazar remembers that as well but the direction of the turn is immaterial and the bullet wound going here to here is consistent with a turn and so he wasn't just walking straight away at the time and he was walking on the right hand side of the passenger side of his truck now if he was walking straight on the past okay if if you read the statement of the defendant not as you do or you have to plaintiff excuse me not as you do um but you say when he says i was turned afterwards to mean i wasn't turning before if assuming it's an ambiguity it could be read either way even if with there's two people saying that he turned that's still a fact issue right it's not a material one and i'll um i'll go back to the other question about why that's not material because of this hand motion he could be around and shooting in a in a second less than a second so it depends the case rises and falls on the hand motion not the turn and that's how we should decide the case so that it's cleaner yes your honor i believe that is correct um say another word about the the angle of the the entry considering that they he was parked against this rail there was about two feet in the record it says there was two feet between the side of the uh truck and the guardrail protecting from falling down to the street below all right if he's walking along in a space that's about this big and he gets shot over here in a trajectory that goes from here to his spine he's turning this way because there's nowhere over there that officer thompson can be he'd have to be on the other side of the guardrail suspended in there so that shows that he was turning and that's what judge rosenthal was saying that consisted with the jurisprudence on this that him saying that he wasn't turning before can't be believed by a reasonable jury okay mr hickson does that about conclude what you have to say uh if i may take just a couple more seconds sure if there was no constitutional violation then there is no municipal liability because they can't show any of the monel factors they haven't shown a custom regarding training or any of that that they've argued here they haven't shown the custom they haven't shown given any evidence of a deliberate indifference by a policymaker there's no policy their own expert testified that the policy was fine so they're going on custom of inadequate training and adequate investigation they don't have evidence of that and so they can't meet the monel factors so summary judgment for the city and for uh officer thompson qualified immunity should be affirmed but as you said that qualified immunity was granted him but that actually the district found no violation no constitutional violation yes yes that's right no constitutional violation and in fact judge rosenthal said that here there wasn't an underlying constitutional violation and so they can't get any of the monel factors okay thank you mr hickson mr palvin we'll hear from you on rebuttal please i want to first briefly address some of the the factual issues again i think that's that's kind of the main point on this case uh first thing i do believe the turn is material and i also believe the direction of material because the evidence shows thompson was standing to the left behind salazar now if everybody starts saying he's turned to the right well the only thing on the right is over the freeway so i don't know how that puts anybody in a threat of immediate harm but regardless another point i want to address is mr higginson said that allen was expert he was not designated as an expert in this case the only two experts are braddon and provost lieutenant allen was simply the hpd lieutenant who's over the aid investigation of this case he was not an expert in this lawsuit uh so there was no expert opinion from him it was his personal opinion just from a review of the case and basically what the officer said that said hey salazar made a turn to the right so i want to clear that up another thing about the turn is they're relying on officer thompson's deposition but the issue is it conflicts with statements he gave earlier again the first statement he gave was in the day of the morning right after the shooting and he did not say salazar reached in his waistband he said suspect concealed hands and had hands near waistband that's it that's the only thing thompson said right after the shooting and then if you look at the other statements uh the next statement he gives a couple months later then he says there's a turn in january 2011 he still doesn't say which way then all of a sudden in his death row then he said well you know now i remember it was to the left so just the the fact issue the inconsistency in thompson's own testimony creates a fact issue even assuming the the waistband issue is material there's a fact issue there from thompson's own testimony another point i want to address is the the fact or the assumption that salazar was drunk or intoxicated this is something rosenthal brings up multiple times in opinion and mr higginson brought up there is no record evidence to support that the only fact that thompson knew at the time ignoring the later pleading no contest ewi the only thing he knew there at the scene his testimony is when salazar rolled the window down i smelled alcohol in the car what about the way he was driving why did you stop him for speeding and that's thompson testimony about changing lanes he said he was changing lanes he was passing cars on the left two lanes of a four or five lane highway uh that's it he didn't say he was he didn't he didn't use the word weaving or anything like that he said he stopped him but his when i asked him his why he stopped him he stopped him for speed but he did mention yes that uh salazar was was changing but salazar did admit to him that they were drinking no not your honor not at the i thought that came out in his depot i did so again the facts that thompson knew on the scene he didn't know anything about salazar drinking at that point which i think is very important that's one of the errors that rosenthal made is she relied heavily on that to kind of build up the threat level of salazar i want to just briefly talk about the liability of the city of houston we briefed it pretty extensively we have the report from my expert keith house and the issue on that we have two is the failure to train and failure to supervise or discipline and both of those are interrelated in this case it's basically the hpd has a written policy for use of force that's pretty standard and it says officer can only use deadly force if it's an objectively reasonable officer is in fear of imminent threat now however what the the actual training the hands-on training according to multiple witnesses that we deposed and the id investigations that you see in this case is they teach them based on the subjective basis you hear thompson saying this depo it's it's what does the officer feel if the officer feels in threat you won't hear a supervisor tell you when and when not to shoot bratton says the same thing sergeant sweat which is thompson's media supervisor says the same thing they all say it's basically up to that particular officer and the same thing you find id investigations id do an investigation and then coming up with the conclusion you always see they use the subjective well this officer could have been in fear even if looking objectively is clearly unreasonable thank you thank you mr poplar that concludes the arguments on the oral argument